**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ST. LUKE'S CATARACT AND LASER
INSTITUTE, P.A.,

    Plaintiff,

v.                                           Case No. 8:06cv223

JAMES C. SANDERSON,
JAMES C. SANDERSON M.D., LLC, and
MARK ERICKSON,

    Defendants.
_____/

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE**
**DEFENDANTS' PATIENT SURVEY FORM INFORMATION**

Plaintiff, St. Luke's Cataract and Laser Institute, P.A. ("St. Luke's"), by counsel, respectfully moves this Court to exclude any patient survey forms produced by Defendants James C. Sanderson and James C. Sanderson M.D., LLC (collectively, the "Defendants"), and any reference to the forms at trial, on the grounds that the information contained in the documents: (1) constitutes hearsay under Fed. R. Evid. 802 for which no exception exists; (2) is irrelevant under Fed. R. Evid. 402, and (3) even if probative of any issue, such probative value is substantially outweighed by the danger of unfair prejudice pursuant to Fed. R. Evid. 403.

In support of this Motion, St. Luke's submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.     FACTUAL BACKGROUND**

As discussed in St. Luke's previously filed *Daubert* motion to exclude the testimony of Patricia Perzel, Defendants have produced in discovery three sets of documents that purport to identify how Defendants' patients heard about, or were referred to, Defendants' practice. These documents are:

1. Completed patient questionnaire forms given by Defendants to their cosmetic surgery patients that ask the patients to identify how they "heard" about Dr. Sanderson (*See* Exhibit B to St. Luke's *Daubert* Motion to Exclude Certain Opinions and Testimony Patricia A. Perzel ("Perzel Motion"), Dkt. No. 171, which is a blank copy of this form);[1]

2. Completed patient information forms that Dr. Sanderson had all of his patients complete (whether they were seeing him for cosmetic or medically necessary surgery), that includes as the final question "Referred or Recommended by." (*See* Exhibit C to St. Luke's Perzel Motion); and

3. Completed patient charts which include a blank next to the words "Consult from:" that was allegedly filled in by Dr. Sanderson's assistants at the time of the patient's initial visit. (*See* Exhibit D to St. Luke's Perzel Motion). (Deposition of James C. Sanderson, M.D., Jan. 17, 2007 at 84:11-14) (attached as Exhibit G to St. Luke's Perzel Motion) (testifying as to the completion of the forms).

---

[1] Because the exhibits to this motion are duplicative of the exhibits to the Perzel Motion, St. Luke's includes those exhibits by reference.

Defendants' experts Patricia Perzel and James Berger conclude from the information in the completed forms that only a small percentage of Defendants' patients were referred to him by the website. They further conclude that the forms evidence that the LaserSpecialist.com website had only a nominal impact on Defendants' business and revenues. For the reasons set forth below, the surveys not only do not support these conclusions, but the surveys are conducted in a manner utterly lacking in the kind of reliability and trustworthiness necessary for the admission of survey evidence at trial.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Court Should Exclude the Patient Survey Forms and Any Related Testimony as Inadmissible Hearsay

The trial judge has broad discretion in the matter of admission or exclusion of evidence and will not be overturned absent an abuse of this discretion. *ADP-Financial Computer Servs., Inc. v. First Nat'l Bank*, 703 F.2d 1261, 1266 (11th Cir. 1983).

"Survey results offered as proof of the matter asserted are hearsay, and thus the results of a survey, and any testimony based on those results, cannot be admitted into evidence unless the survey falls into a recognized class exception to the hearsay rule or into the residual exception contained in Fed. R. Evid. [807]." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 517 n. 14 (3d Cir. 1998) (citing *Pittsburgh Press Club v. United States,* 579 F.2d 751, 755-58 (3d Cir.1978)); *Allstates Air Cargo, Inc. v. United States*, 42 Fed. Cl. 118, 122 (Fed. Cl. 1998). Defendants are clearly attempting to introduce the three patient "surveys" in this case for the truth of the matters asserted in the surveys; namely, how the patients heard of or were referred to Dr. Sanderson. Accordingly, the information in these forms, and any summaries thereof, constitutes hearsay under Fed. R.

3

Evid. 802. To be admissible at trial, Defendants must establish that the evidence meets one of the recognized hearsay exceptions.

The only potential exceptions available to Defendants are the business records exception (Fed. R. Evid. 803(6)) and the residual exception (Fed. R. Evid. 807).[2] For the completed forms to be admissible under either exception, Defendants must establish that the surveys and the results thereof are "trustworthy." *See* Fed R. Evid. 803(6) (precluding the admission of business records if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness"); Fed. R. Evid. 807 (requiring "circumstantial guarantees of trustworthiness" for admissibility); *see also Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1544 (10th Cir. 1996). "Survey evidence is admissible as an exception to the hearsay rule only if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness." *Dick's Sporting Goods, Inc. v. Dick's Clothing and Sporting Goods, Inc.*, No. 98-1653, 1999 WL 639165, at *5 (4th Cir. Aug. 20, 1999) (same).

"A survey is trustworthy if it is shown to have been conducted according to generally accepted survey principles." *Harolds Stores, Inc.*, 82 F.3d at 1544; *accord C. A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1054 (5th Cir. July 1981) ("Surveys and customer questionnaires are admissible … upon a showing that the poll is reliable and was

---

[2] In trademark cases, likelihood of confusion surveys are admitted under the state of mind exception because they measure a consumer's mental state as to whether he/she believes products sold under similar marks originate from the same source. *See, e.g., Holiday Inns, Inc. v. Holiday Out In Am.*, 481 F.2d 445, 447-48 (5th Cir. 1973). The surveys in this case do not ask for state of mind information; therefore, this exception is unavailable.

4

compiled in accordance with accepted survey methods"); *Brokerage Concepts, Inc*, 140 F.3d at 517, n.14.

To be conducted in accordance with generally accepted survey principles, "[a] proper universe must be examined and a representative sample must be chosen; the persons conducting the survey must be experts; the data must be properly gathered and accurately reported. It is essential that the sample design, the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques." *Brokerage Concepts, Inc*, 140 F.3d at 517 n.14 (quotations omitted); *accord Allstates Air Cargo, Inc.*, 42 Fed. Cl. at 122. *See also Manual for Complex Litigation (Third)* § 21.493 (1995).

In the present case, none of Defendants' three surveys were done in an objective or scientific manner by survey experts under generally accepted survey principals or techniques. No survey experts were involved in the design or implementation of the surveys. Rather, the forms at issue were created by Defendants and handed out to Dr. Sanderson's patients by his assistants for self completion. Or, in the case of the patient charts, completed by assistants with no identified training, knowledge, or expertise in survey design, survey completion, or survey interviewing technique. There is no evidence in the record that the forms are given with additional instructions or that there is any supervision of the patients in their completion of the forms. *See Allstates Air Cargo, Inc.*, 42 Fed. Cl. at 122 (holding that survey inadmissible as untrustworthy, in part, because neither "of the two individuals who selected the sample, formulated the questions, contacted the respondents, and analyzed the results had any special training or expertise in conducting a scientific survey").

The forms themselves suffer from numerous deficiencies. With regard to the cosmetic surgery patient questionnaire, the questionnaire is given only to cosmetic surgery patients and only at their initial consultation visit. (*See* Deposition of Patricia A. Perzel, March 13, 2007 at 50:2-6 ("Perzel Dep.") (attached as Exhibit A to St. Luke's Perzel Motion). Accordingly, the questionnaire cannot measure any information regarding whether patients visited the website after their initial visit, but before they made a decision to use Dr. Sanderson as their surgeon, nor can it measure how many patients seeking Dr. Sanderson's services for medically necessary procedures were influenced by the website. (Joint Pretrial Statement § 9, "Statement of Undisputed Facts," #75, Dkt. No. 158). The questionnaire does not ask to identify all sources from which they heard about Dr. Sanderson; therefore, it is likely that many consumers completed the form with just information about the first source from which they heard about Dr. Sanderson.

With regard to the patient information chart, Defendants' expert James Berger admits that the question "Referred or Recommended By" is leading and asks for the name of a person, not for information such as "website." (Deposition of James T. Berger, March 15, 2007, 61:3-5; 174:3-20 ("Berger Dep.") (attached as Exhibit F to Perzel Motion). The form thus does not capture evidence regarding whether patients heard about Dr. Sanderson through the website or whether the website influenced their decisions to use Dr. Sanderson.

With regard to the patient charts, the charts are filled out by Dr. Sanderson's assistants based upon information provided by the patients; thus, there are two levels of hearsay inherent in these forms. Moreover, the information is only as accurate as recorded by the assistants, and there is no evidence in the record as to exactly what question(s) the

assistants asked of the patients to induce the information recorded (unlike what would happen in a scientifically conducted survey where all questions are written out and carefully read to each survey interviewee in the same manner). The location in the patient chart where the information is input says "Consult from." It is therefore entirely possible, if not likely, that Dr. Sanderson's assistants actually asked the patients for information regarding whom they were referred or recommended by, not how they "heard" of Dr. Sanderson. Regardless, because the question that was asked is not recorded, there is no way of knowing exactly what the recorded information is responsive to. The completed information is thus wholly untrustworthy.

The results of the survey also cannot be tabulated using proper statistical techniques because the results are incomplete. Ms. Perzel purports to have personally reviewed every completed survey form, patient questionnaire, and patient chart. The results of her review are set forth in Attachment 5 to her report. (See Exhibit A to Perzel Motion.) The attachment reveals that 342 patients provided no information in response to *any* of the three forms. The results of the surveys are thus completely unreliable from a statistical standpoint to establish the point Defendants are trying to make with them (i.e., that only patients who responded "website" were influenced in their decision to use Dr. Sanderson by the website).[3]

Finally, the results of the surveys are not reliable or trustworthy because they do not measure what Defendants and their experts purport them to measure. As set forth above, the Defendants and their experts claim that these forms evidence that only patients who

---

[3] The fact that so many patient charts include no information further evidences that Dr. Sanderson's assistants did not complete the charts in a scientific or reliable manner.

responded "website" in one of these forms could have purchased services from Dr. Sanderson as a result of the website. However, that is not the information the various surveys ask for. In the case of the cosmetic patient survey questionnaire and patient chart, the information requested is only how the patient "heard" of Dr. Sanderson. The forms do not ask for (and patients are not probed to respond with) information about what influenced them to select Dr. Sanderson as their surgeon. In the case of the patient charts, the patients were apparently asked only to identify how they heard of Dr. Sanderson or who referred or recommended them to Dr. Sanderson. As Mr. Berger concedes, these questions ask for different information than the question, "What influenced you to use Dr. Sanderson for your surgery." (*See* Berger Dep. at 226:7-19.)

St. Luke's has no opportunity to cross examine the patients to determine whether the information provided in response to the survey forms is complete or correct. The information is wholly untrustworthy and therefore does not properly qualify for admission under either the business records exception or the residual exception. Accordingly, St. Luke's respectfully requests that the evidence be excluded at trial.[4]

---

[4] Fed. R. Evid. 807 further provides that evidence is admissible under the rule only if "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." The Defendants could easily have captured direct evidence of what factors influenced their patients' decisions to use Dr. Sanderson by surveying the patients through a qualified survey expert. Defendants chose not to do so. Accordingly, Defendants should not now be allowed to take advantage of the residual exception.

**B.     The Patient Survey Forms Should Be Excluded on the Grounds of Relevance or Unfair Prejudice**

Even if the Court determines that the patient survey forms fit into a hearsay exception, the forms are irrelevant to any issue legitimately in dispute in this case. Defendants argue that the forms are relevant because they measure the effect the website had on patient decisions to choose Dr. Sanderson. Nevertheless, Defendants' own survey expert concedes that the forms do not measure this issue but at most measure only how the patients *heard* of Dr. Sanderson. (*Id.*) In other words, the patient survey forms are not probative of the issue for which the Defendants seek to introduce them (namely, the apportionment of profits). The forms should thus be excluded as irrelevant under Federal Rule of Evidence 402.

Even assuming arguendo that the survey forms have any marginal relevance to the matters at issue, any such relevance is substantially outweighed by the danger of unfair prejudice to St. Luke's. As set forth above, the survey results are wholly unreliable because of the unscientific manner in which they were designed and implemented. The fact that hundreds of patients elected not to provide any information also skews any conclusions of any kind that could be drawn from the documents. The documents are therefore certain to have more unfair prejudicial effect on the jury than any marginal probative value they could offer as to any issue. Moreover, the fact that Defendants' experts so heavily rely on these suspect survey forms will almost certainly lead the jury to afford the forms undue weight and attention. Accordingly, even if relevant, the forms and any reference to them should be excluded under Federal Rule of Evidence 403.

9

  /s/ Mark D. Kiser
MARK D. KISER
mdkiser@trenam.com
Florida Bar No.:  420409
JOHN D. GOLDSMITH
jdgoldsmith@trenam.com
Florida Bar No.:  444278
Trenam, Kemker, Scharf, Barkin,
  Frye, O'Neill & Mullis, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Phone: (813) 223-7474
Fax: (813) 229-6553

-  and  -

DAVID J. STEWART
dstewart@alston.com
Admitted *Pro Hac Vice*
STACEY A. MOLLOHAN
stacey.mollohan@alston.com
Admitted *Pro Hac Vice*
JASON D. ROSENBERG
jason.rosenberg@alston.com
Admitted *Pro Hac Vice*
BRIE A. L. BROWN
brie.brown@alston.com
Admitted *Pro Hac Vice*
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia   30309-3424
(404) 881-7000 Telephone
(404) 881-7777 Facsimile
Counsel for Plaintiff, St. Luke's Cataract
and Laser Institute, P.A.

## CERTIFICATION OF MEET AND CONFER

Counsel for St. Luke's certifies that it has met and conferred with counsel for Defendants, James C. Sanderson and James C. Sanderson M.D., LLC in a good faith attempt to resolve the issues addressed by this motion but that the issues have not been resolved.

  /s/ Mark D. Kiser
Mark D. Kiser, Esquire
Trenam Kemker
2700 Bank of America Plaza
101 East Kennedy Blvd.
Tampa, FL 33602

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANTS' PATIENT SURVEY FORM INFORMATION has been electronically filed on May 2, 2007 with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing and copy to counsel for all parties.

| | |
|---|---|
| H. William Larson, Esquire | larsonb@tampabay.rr.com |
| Deborah O'Brien, Esquire | dmobrienlaw@aol.com/dobrien@lowis-gellen.com |
| Ethan F. Hayward | ehayward@lowis-gellen.com |

By:     /s/ Mark D. Kiser          .
             mdkiser@trenam.com

1967919v1